IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| I-LEAD CHARTER SCHOOL-READING, et al, | CIVIL ACTION |
| Plaintiffs, | NO. 16-2844 |
| v. | |
| READING SCHOOL DISTRICT, et al, | |
| Defendants. | |

**MEMORANDUM OPINION**

**Schmehl, J.  /s/ JLS**                                                                          **June 20, 2017**

### I.     INTRODUCTION

Before the Court is the motion to dismiss of Defendants, Reading School District, Board of School Directors of Reading School District, Robin Costenbader-Jacobson, Abraham Cepeda, Esq., Bernardo Carbajal, and Rebecca Acosta (hereinafter "Defendants") (Docket No. 14). Plaintiffs, I-Lead Charter School, nine parents suing on their own behalf and on behalf of their children who attend I-Lead, and Will Cinfici and Karen McCree, former members of the Reading School Board (hereinafter "Plaintiffs") have filed an opposition to the motion, and Defendants have filed a reply.

Plaintiffs' Amended Complaint asserts First Amendment claims, due process claims and Sunshine Act claims all arising out of the School Board's vote to revoke I-Lead's charter under the Pennsylvania Charter School Law. Having read the parties' briefing, and after oral argument, for the reasons that follow, I find that Plaintiffs cannot be successful on their claims against Defendants. Therefore, I will grant the motion to dismiss.

## II.   FACTUAL BACKGROUND

I-Lead Charter School (hereinafter "I-Lead") is located in Reading, Pennsylvania, and was granted a charter by the Reading School District in 2011. (Am. Compl. ¶¶ 2, 5.) The charter was renewed in 2013, and in 2015, the school board began the process to revoke I-Lead's charter. (Id., ¶¶ 2, 72.)

In addition to I-Lead, Plaintiffs include nine parents who are suing on their own behalf and on behalf of their children. Their children are enrolled in I-Lead and these parents want their children to continue to be educated at the school. (Id., ¶¶ 6-14.) Plaintiffs also include two Reading residents who are former Directors on the Reading School District School Board. (Id., ¶ 15.)

Defendants are the Reading School District, the Reading School District School Board, and current School Board Directors Robin Costenbader-Jacobson, Abraham Cepeda and Bernardo Carabajal, who are sued both individually and in their official capacities. (Id., ¶¶ 16-18.) Rebecca Acosta, the final defendant, is sued individually "and in her capacity as a former Director on the Board." (Id., ¶ 19.)

A reading of the Amended Complaint shows that I-Lead's problems seemed to begin in March of 2014, when the School Board reviewed a letter from I-Lead's landlord that was derogatory towards I-Lead (Id., ¶¶ 29-30, 32.) Plaintiffs allege that a minority of Board members "seized on [the] allegations [in this letter] as a possible ground to sway public opinion against I-Lead and seek its closure…" (Id., ¶ 40.) The Board held a secret meeting "between March 7, 2014 and June 1, 2014" where they retained the services of counsel to investigate the allegations contained in the letter. (Id., ¶ 41.) Plaintiffs allege

that other meetings were held in secret and with counsel to make decisions regarding strategies to close I-Lead. (Id., ¶ 43.)

Plaintiffs allege that the Board was counseled to challenge the zoning administrator's approval of the use of the building that the school was housed in to "gain a tactical advantage against" I-Lead, which the Board did and said challenge was eventually rejected. (Id., ¶¶ 47, 48.) In 2015, then Board Director Rebecca Acosta told Angel Figueroa, an executive at I-Lead, that she would oppose contesting the tax exemption for the building that I-Lead was located in if he publically supported her candidacy for magisterial district judge in the May 2015 primary election, and that she "spurred the Board's attack" when he refused. (Id., ¶¶ 51, 53.)

On June 5, 2015, I-Lead received a letter from counsel for the School Board that threatened revocation proceedings against I-Lead and demanded that the school agreed to several charter terms, which were allegedly "designed to be implemented for the sole purpose of ensuring the termination of I-Lead's charter." (Id., ¶ 59.) I-Lead eventually told the Board that it was "prepared, albeit under duress, to sign the charter agreement as proposed," and the School District, after meeting in secret in violation of the Sunshine Law, withdrew its offer of charter amendment and instead instituted revocation proceedings against I-Lead. (Id., ¶¶ 59-62.)

On September 21, 2015, in order to "resolve the conflicts" that it had with the School District, I-Lead filed a Request for Amendment to Charter with the District. (Id., ¶ 67.) The Board then met in secret in violation of the Sunshine Act, deliberated and decided to ignore the request for charter amendment. (Id., ¶ 68.) Thereafter, on September 23, 2015, at a public meeting, the Board approved a resolution that initiated

3

revocation proceedings against I-Lead, and appointed Jeffrey D. Litts, Esquire, to serve as a hearing officer for the revocation proceedings. (Id., ¶¶ 72, 76.) Mr. Litts presided over public hearings on the revocation and received evidence to prepare findings of fact and conclusions of law. (Id., ¶ 80.) Mr. Litts and the Board then conducted secret meetings in violation of the Sunshine Act to shape Litts' findings and conclusions so as to effect a revocation of I-Lead's charter. (Id.) In October of 2015, the school district rejected I-Lead's offer to mediate their dispute. (Id., ¶¶ 83, 85.)

### III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) (citing Iqbal, 556 U.S. at 678).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016) (*quoting* Iqbal, 556 U.S. at 675,

4

679); *see also* Burtch, 662 F.3d at 221; Malleus v. George, 641 F.3d 560, 563 (3d. Cir. 2011); Santiago v. Warminster Township, 629 F.3d 121, 130 (3d. Cir. 2010).

IV.     **DISCUSSION**

Defendants move to dismiss the amended complaint in its entirety. For the reasons that follow, I will grant Defendants' motion in its entirety and dismiss Plaintiffs' Amended Complaint.[1]

**A. The Individual Plaintiffs Will be Dismissed Due to Lack of Standing**

It is undisputed that federal courts can only resolve matters that involve "cases and controversies." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 254 (3d Cir. 2005). As part of the case-or-controversy requirement, "plaintiffs must establish that they have standing to sue." Id. The Supreme Court has held that in order to establish standing a plaintiff must establish three elements: an injury in fact; a causal connection between the injury and the conduct complained of; and substantial likelihood of remedy, not mere speculation that the requested relief will remedy the alleged injury in fact. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). An injury-in-fact "is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. . ." Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 290-91 (3d Cir. 2005).

The individual parent Plaintiffs and their children clearly have no standing to sue in this matter because they do not allege that they suffer from any cognizable injury. Plaintiffs allege that they have a "right to continue the children's educations at [I-Lead]." (Am. Compl. ¶ 138.) However, I-Lead is continuing to operate as of the date of this

---

[1] At oral argument and in their opposition to Defendants' motion, Plaintiffs agreed to dismiss: 1) claims against the school board in its own name; 2) punitive damages claim against the school district; and 3) **monetary** official capacity claims against all of the individual defendants.

5

opinion, and was recently successful in its *de novo* appeal of the charter revocation to the CAB. I-Lead will continue to operate during any further appeal. Therefore, Plaintiff parents and their children cannot allege that they were injured by any actions of Defendants, as they continue to be educated at I-Lead.

Plaintiffs argue that they have standing based upon the Board's conduct on September 23, 2015, which they allege caused them harm. Specifically, Plaintiffs claim that "[d]ue to the September 23rd revocation resolution, the students risk losing the educational benefit received attending [I-Lead], and the taxpayers risk adverse financial impact by the loss of an efficient system of public schools established through utilization of the charter school system enabled by the [Charter School Law]." (Docket No. 16, p. 6.)

First, the allegation that the Board's actions on September 23, 2015 caused harm to Plaintiffs is insufficient to give Plaintiffs standing. No Plaintiff was prevented from speaking at the September 23, 2015 meeting, members of the public were given time to submit statements to the Board regarding the revocation, and there was a public hearing on the revocation. Plaintiffs had many opportunities to speak before the Board made its decision. Accordingly, Plaintiff parents and their children are dismissed from this matter due to lack of standing.

Plaintiffs, Will Cinfici and Karen McCree, former members of the Reading School Board, will also be dismissed from this matter due to lack of standing. A review of the Amended Complaint shows that Cinfici and McCree have not made a single allegation of any injury resulting from Defendants' actions or inactions.

To the extent Plaintiffs are arguing that the Plaintiff parents or Cinfici and McCree have standing as "municipal taxpayers," this argument also must fail. Courts

have sometimes recognized municipal taxpayer standing in certain circumstances, although state and federal taxpayer standing is not recognized. See Doremus v. Bd. of Ed. of Hawthorne, 342 U.S. 429, 434 (1952). However, it is state spending, not municipal spending that we are addressing here regarding the funding of a charter school, and the law is clear that "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." Daimler Chrysler Corp. v. Cuno, 547 U.S. 332, 346 (2006). Therefore, this argument also fails to provide standing to the individual plaintiffs in this matter. Accordingly, all individual plaintiffs are dismissed from this matter due to their lack of standing.

**B. Constitutional Claims Brought Pursuant to 42 U.S.C. § 1983**

As the individual plaintiffs must be dismissed from this matter due to lack of standing to sue, the only remaining plaintiff is I-Lead itself. All constitutional claims brought by I-Lead against the School District under section 1983 must be dismissed, as a charter school cannot sue its creator school district under that section.

The political subdivision standing doctrine holds that a municipality, "created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." Williams v. Mayor of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933). This rule has been applied "equally to all political subdivisions of a state ... and bars any alleged federal claim" against the state by any of its subdivisions. *See* Cnty. of Lancaster v. Phila. Elec. Co., 386 F.Supp. 934, 940 (E.D.Pa. Jan. 3, 1975); Nw. Sch. Dist. v. Pittenger, 397 F.Supp. 975, 979–80 (W.D.Pa.975). Defendants in this matter argue that a charter school operates pursuant to a written charter signed by the local school board

7

and is therefore analogous to a municipality where the powers granted to it are defined by its creator.

I find that Defendants are correct in this argument, and a charter school operates with the authorization of a local school district for the limited purpose of providing an alternate education option for students of the district. "This relationship is analogous to that of a municipal corporation-creator where the powers granted to the municipal corporation are defined and limited by the creator." Pocono Mountain Charter School v. Pocono Mountain School District, et al, 908 F.Supp.2d 597, 612 (M.D. 2012). Therefore, a charter school, like a municipality, may not bring a constitutional challenge against its creator. Id.; *see also* Reach Academy for Boys and Girls, Inc. v. Delaware Dept. of Education, 8 F.Supp.3d 574, 578 (D. Del. 2014). Accordingly, I-Lead is sufficiently analogous to a municipal corporation in this matter that it is precluded from asserting any constitutional claims against the school district. Therefore, all of I-Lead's section 1983 claims are dismissed from Plaintiffs' Amended Complaint with prejudice.

### C. First Amendment Claims

Even if I-Lead could bring constitutional claims against the school district, its First Amendment claims would still fail. Plaintiffs state that their "claim of 1st Amendment restriction deals specifically with the September 23 [2015] Board meeting where the resolution authorizing charter termination was discussed and voted upon." (Docket No. 16, p. 13.) It appears Plaintiffs are arguing that their speech was restricted because they were not given sufficient notice that the subject of I-Lead's charter revocation would be discussed at this meeting. However, Plaintiffs cite no authority to support the proposition that they were entitled to specific notice of board agenda items in

8

advance of the meeting. Further, Plaintiffs were not denied the right to speak at the September 23, 2015 Board meeting. Accordingly, Plaintiffs' First Amendment claims are dismissed.

### D. Due Process Claims

Both Plaintiffs' procedural and substantive due process claims also must fail. To prevail on a substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.' Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139–140 (3d Cir.2000) (quotation marks and citation omitted). For a property interest to be protected for purposes of substantive due process, it must be 'fundamental' under the United States Constitution. Nicholas, 227 F.3d at 140. Any substantive due process claim by either the individual plaintiffs or I-Lead must fail, because they have failed to allege a "fundamental" property interest that has been taken away from them. Continued education at I-Lead is clearly not a fundamental right under the United States Constitution. Therefore, any and all substantive due process claims are dismissed.

In order to establish a violation of an individual's right to procedural due process, a plaintiff must first demonstrate the existence of a protected interest in life, liberty or property that has been interfered with by the state; and then second, establish that the procedures attendant upon that deprivation were constitutionally insufficient. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The individual plaintiffs in this matter do not allege the deprivation of a protected interest. Plaintiffs do not have a protected liberty or property interest in attending a school of their

9

choice. *See* Pocono Mountain Charter School v. Pocono Mountain School District, 442 Fed. Appx. 681, 685 n. 5 (3d Cir. 2011). Plaintiffs claim that they are "not claiming a property interest in attending the school of their choice, but instead they are claiming a property interest in remaining in the charter school they are enrolled in . . ." (Docket No. 16, p. 15.) I find this argument to be a distinction without a legal difference. Plaintiffs are arguing that they have a property interest in continuing to attend I-Lead, which is clearly not a protected interest under the Constitution. Therefore, the individual plaintiffs' procedural due process claims must fail.

I-Lead's procedural due process claim also fails, because it had a remedy from any revocation of its charter. Pennsylvania law provides that the Charter School Appeal Board "shall have the exclusive review of a decision not to renew or revoke a charter." 24 P.S. § 17-1729-A(d). All decisions of the Charter Appeal Board are then subject to appellate review by the Commonwealth Court. 24 P.S. § 17-1729-A(h). As the Charter School Law provides an exclusive remedy of the decision to revoke a charter in the form of an appeal to CAB, a remedy which I-Lead did indeed choose to utilize, I-Lead has clearly not been deprived of any protected interest, as the CAB found in I-Lead's favor. Further, Plaintiffs make no allegations that the procedures set forth in the Charter School Law to appeal a revocation of a charter are constitutionally insufficient. Accordingly, I-Lead's procedural due process claim must fail.

### E. Claims Under the Pennsylvania Constitution

Plaintiffs have also brought claims under Article I, Section 7 and 20 of the Pennsylvania Constitution. However, Plaintiffs' claims under the Pennsylvania Constitution must also fail, as "[t]o date, neither Pennsylvania statutory authority, nor

appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." Baletta v. Spadoni, 47 A.3d 183, 192 (Pa. Cmwlth. 2012) (citations omitted). Plaintiffs' response fails to set forth any authority to support the proposition that they are entitled to recover monetary damages under the Pennsylvania Constitution. Therefore, Plaintiffs' due process and First Amendment claims under the Pennsylvania Constitution must be dismissed with prejudice.

**F. Claims for Sunshine Act Violations**

Lastly, Plaintiffs set forth claims for alleged violations of the Pennsylvania Sunshine Act, 65 Pa. C.S. § 701-716. These claims must also fail. Legal challenges alleging violations of the Sunshine Act must be brought within 30 days of the date of an open meeting, or 30 days from the date of discovery of an alleged closed meeting, but no more than one (1) year after the date of the meeting in question. Plaintiffs allege in their Amended Complaint that they discovered the Sunshine Act issues within thirty days of the commencement of this case, but provide no allegations or evidence to support that claim. Plaintiffs' Amended Complaint does not include the dates of the occurrence of closed meetings alleged, and if dates of alleged closed meetings are provided in the Amended Complaint, they are more than one year before the complaint in this case was filed. Thus, Plaintiffs have failed to allege that the closed meetings that they claim violate the Sunshine Act occurred less than one year before the original complaint was filed in this matter. Therefore, Plaintiffs' Sunshine Act claims are dismissed as untimely.

Further, I-Lead, the only proper plaintiff in this action, is not a "person" permitted to bring a legal challenge under the Sunshine Act. An action to challenge actions of an agency under the Sunshine Act may be brought by "any person where the agency whose

act is complained of is located or where the act complained of occurred." 65 Pa.C.S.A. §715. Courts consider the definition of the term "person" as used in that statute under Pennsylvania law. Press-Enter., Inc. v. Benton Area Sch. Dist., 604 A.2d 1221, 1223 (Pa.Cmwlth 1992). Under 1 Pa.C.S.A. §1991 , a "person" includes a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." As this definition of person clearly does not include the type of entity we have here, a charter school, I-Lead is not entitled to bring a legal challenge under the Sunshine Act, and these claims are also dismissed with prejudice.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and this case shall be dismissed.